[Tagged]



**ORDERED in the Southern District of Florida on September 11, 2015.**

_____
**Erik P. Kimball, Judge**
**United States Bankruptcy Court**

---

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

| | |
|---|---|
| In re: | Case No. 12-30081-EPK |
| | **CHAPTER 7** |
| **CLSF III IV, Inc.** *et al.*, | **(Substantively Consolidated)** |
| | |
|     Debtors. | |

_____/

**PARCSIDE EQUITY, LLC,**

    Plaintiff,                        **Consolidated**

v.                                   **ADV. PROC. NO.  13-01479-EPK**

**DEBORAH MENOTTE, THE CHAPTER 7**
**TRUSTEE FOR THE IBRAHIM RABADI**
**TR DTD 02/03/2011 a/k/a IBRAHIM RABADI**
**TRUST DATED 02/03/2011, THE ALTER**
**EGO OF CLSF III IV, INC,**

    Defendant.

_____/

**DEBORAH C. MENOTTE, CHAPTER 7**
**TRUSTEE,**

    Plaintiff,

v.

**PHILIP LIAN,**

    Defendant.

_____/

**PROPOSED CONCLUSIONS OF LAW ON MOTION FOR SUMMARY JUDGMENT**

**THIS MATTER** came before the Court upon the *Parcside Equity, LLC's Motion for Partial Summary Judgment on Counts III, IV, V, VI and VII of the Trustee's Amended Counterclaim Based on the Safe Harbor Provisions of Section 546(e) of the Bankruptcy Code* [ECF No. 203] (the "Motion") filed in Adv. Proc. No. 13-01479-EPK by Parcside Equity, LLC ("Parcside"), joined in by Philip Lian, and the *Philip Lian's Motion for Summary Judgment on All Counts of the Trustee's Complaint* [ECF No. 24] (the "Joinder") filed in Adv. Proc. No. 14-01600-EPK by Philip Lian ("Lian" and, together with Parcside, the "Defendants").   As discussed more fully below, the Court proposes to grant the Motion and Joinder and enter judgment in favor of the Defendants accordingly.

Background

The Defendants move for partial summary judgment on Counts III through VIII, inclusive, and X of the Trustee's Second Amended Counterclaim against Parcside [ECF No. 243] and on all counts of the Amended Complaint against Lian [ECF No. 41, Adv. Proc. No. 14-1600].[1]  The two adversary proceedings are consolidated.  The counts at issue present fraudulent transfer and unjust enrichment claims.

---

[1] In this case, the Motion and Joinder were filed in connection with the Trustee's amended counterclaims in the Parcside Adversary [ECF No. 103] and the Trustee's initial complaint in the Lian Adversary [ECF No. 1].  After the motions were filed, the Trustee filed her second amended counterclaims against Parcside [ECF No. 243 in the Parcside Adversary] and amended complaint against Lian [ECF No. 41 in the Lian Adversary].  The second amended counterclaim and amended complaint added fraudulent transfer claims under New York law. Because the Trustee uses her § 544 avoidance powers to bring the added counts, the § 546(e) defense applies equally to those counts. The parties continued to brief the Motion and Joinder even after the Trustee filed her amended pleadings.  It appears that the parties do not object to the Court applying the Motion and Joinder to the amended pleadings.  The Court considers the § 546(e) defense in connection with all counts of the amended pleadings to which it may apply.

Deborah C. Menotte, Chapter 7 Trustee (the "Trustee), seeks to recover more than $39 million from each of Parcside and Lian. This amount represents the aggregate transfers Parcside received, allegedly for the benefit of Lian, within the six years prior to the petition date. [ECF No. 292 ("Joint Stip. 1") ¶ 10] The transfers were allegedly received as part of what the Trustee terms the "Quality Investment Scheme".

The Quality Investment Scheme involved the sale to investors in Europe of indirect interests in life insurance policies insuring the lives of American individuals. European investors purchased participation interests in Dutch investment funds. Each Dutch investment fund became the beneficiary of a United States trust that either held directly a single life insurance policy on an American individual along with related reinsurance and funds necessary to service the policy, or was the sole owner of a United States corporation that held such assets. The debtors and substantively consolidated entities in these jointly administered bankruptcy cases are some of the trusts and corporations involved in the Quality Investment Scheme. In theory, at least, the funds invested by the European investors were to be used by the debtors and related entities to acquire and maintain the subject life insurance policies. The transfers at issue in these consolidated adversary proceedings are payments made in connection with the acquisition of the life insurance policies by the debtors and related entities via Parcside.

The Quality Investment Scheme was primarily orchestrated by Dennis Edward Moens ("Moens"). Moens utilized Frank Laan and Laan's company, Quality Investments, B.V., as the public face of the scheme in Europe for purposes of sales and marketing. [Joint Stip. 1 ¶ 13]

Quality Investments, B.V. created and marketed, to investors primarily from Belgium and the Netherlands ("European Investors"), participation interests in Dutch

3

funds.  Each fund was known either as a "CLSF Fund" or a "BGI Fund" (collectively, the "QI Funds").

To purchase a participation interest in a QI Fund, European Investors wired money into New Jersey IOLTA bank accounts (the "Peck P.A. Accounts") operated and administered by Deborah Peck ("Peck") through her law firm Deborah C. Peck, Esq., P.A. ("Peck P.A."). [Joint Stip. 1 ¶ 15]  The Peck P.A. Accounts were held first at TD Bank, as successor to Commerce Bank, and then at Wells Fargo Bank, P.A. [ECF No. 369 ("Joint Stip. 2") ¶ 2]  Ms. Peck is a debtor in these cases and Peck P.A. is a non-debtor entity substantively consolidated in these cases.

The substantively consolidated debtors and related entities include various trusts and corporations formed over several years.  [Joint Stip. 1 ¶ 12]  Moens operated entities known as Watershed, LLC and Crystal Life Capital, S.A. (collectively, "Watershed"). [Joint Stip. 1 ¶ 16]  Watershed settled Florida trusts with Peck named the trustee of each trust. Each trust was an American business entity.  Initially, each trust purchased and owned a single, non-variable life insurance policy on a single American insured.  The corpus of each trust consisted of the policy, reinsurance, and monies to pay for premiums.  [Joint Stip. 1 ¶¶ 12-14 (quotations omitted)]  Each QI Fund was made a beneficiary of the related trust.

After the trusts acquired the life insurance policies, in many cases Peck formed corporations.  In cases where Peck formed a corporation, the associated trust then transferred title to its life insurance policy and related assets to the corporation.  The transferor trust then became the sole shareholder of the related corporation.  The QI Fund that was affiliated with the transferor trust remained the beneficiary of that trust. [Joint Stip. 1 ¶ 14]  The European Investors who invested in the QI Funds thus held an indirect interest in the life insurance policy owned by the corporation.

4

Parcside is a life settlement provider that either buys life insurance policies from an owner/insured and then resells the policy to a third party or acts as the agent of the purchaser to purchase them. [*See* Joint Stip. 1 ¶ 19]  At all relevant times, Lian was Parcside's sole manager, member, owner, and, with the exception of one administrative assistant, its sole employee. [Joint Stip. 1 ¶ 17]

The acquisition of each life insurance policy involved multiple steps.  According to the documents now before the Court, each policy at issue in these cases was to be originally acquired by Parcside from the insured or other policy owner, then re-sold to Watershed, then re-sold to the relevant trust, and then (where relevant) transferred to the related corporation.

Parcside located potential life insurance policies for acquisition and presented them to Peck and/or Joe Kelly Bloomer (Peck's husband), who then presented them to Moens. [Joint Stip. 1 ¶ 23]  In theory, Watershed purchased life insurance policies from Parcside and then re-sold the policies to the trusts. [Joint Stip. 1 ¶ 16]  Based on the contracts now before the Court, Peck utilized the funds in the Peck P.A. Accounts to, among other things, purchase life insurance policies from a Moens entity.  [Joint Stip. 1 ¶ 15]

Parcside prepared all of the contracts involved in the process.  Parcside prepared contracts of sale between the policy insured or its owner and Parcside.  Parcside prepared contracts for sale between Parcside and Watershed.  Parcside prepared a template for a contract of sale between Watershed and the trust that would acquire the policy for the benefit of the related QI Fund.  Parcside prepared transfer documents to effectuate the transfer of the subject policies directly from the insured or other policy owner to the

applicable trust.[2]  Parcside also prepared "rescission documents" enabling Parcside to, in

effect, void Parcside's sale of the policy to Watershed and Watershed's sale to the trust.

With the exception of the life insurance policy insuring the life of Ibrahim Rabadi, Parcside

never exercised a right to rescind the transfer of any of the policies sold to Watershed and

ultimately re-sold to the trusts.  [Joint Stip. 1 ¶ 24]

The transfers at issue in these adversary proceedings are payments made from the

Peck P.A. Accounts to Parcside in payment for insurance policies ultimately acquired by the

trusts.

Summary Judgment Standard

Federal Rule of Civil Procedure 56(a), made applicable to this matter by Federal

Rule of Bankruptcy Procedure 7056, provides that "[t]he court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

247-48 (1986).  "An issue of fact is 'material' if it is a legal element of the claim under the

applicable substantive law which might affect the outcome of the case." *Allen v. Tyson*

*Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).  In considering a motion for summary

judgment, the Court must construe all facts and draw all reasonable inferences in the light

most favorable to the non-moving party. *Id.*

---

[2] In spite of the several levels of arbitrage inherent in the transfer of each life insurance policy,
Parcside's own documents reveal that the policies themselves were to be transferred directly to the
trust set up to hold the policy for the investment scheme.  Indeed, with regard to each policy
acquired by a trust Parcside eventually tendered a transfer notice to the relevant insurance company
indicating a transfer directly from the insured or policy owner to the relevant trust.  [Joint Stip. 1 ¶
25]

6

The moving party has the burden of establishing that there is an absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 323.  Once the moving party meets that burden, the burden shifts to the non-movant, who must present specific facts showing that there exists a genuine dispute of material fact. *Walker v. Darby*, 911 F.2d 1573, 1576 (11th Cir. 1990) (citation omitted).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Id.* at 1577 (*citing Anderson*, 477 U.S. at 252).

At the summary judgment stage, the Court will not weigh the evidence or find facts; rather, the Court determines only whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003).

<u>Analysis</u>

In these consolidated adversary proceedings, the Trustee pursues claims of fraudulent transfer and unjust enrichment against Parcside and transferee liability against Lian.  The Defendants argue that 11 U.S.C. § 546(e) prohibits the Trustee from avoiding the transfers at issue.  In addition, Lian argues that he did not receive the benefit of the transfers and so the Trustee may not recover the transfers from him on that basis.

The § 546(e) defense provides, in relevant part, that, except where a trustee proceeds under the actual fraud provision of the Code, § 548(a)(1)(A), a trustee may not avoid a transfer that is (1) either (a) a settlement payment or (b) made in connection with a securities contract and (2) made by or to (or for the benefit of) a financial institution.

<u>Transfers were made by or to a financial institution</u>

Section 546(e) requires that the transfers at issue be "made by or to (or for the benefit of) a . . . financial institution."

Section 101(22) of the Bankruptcy Code defines "financial institution" as follows:

(22)  The term "financial institution" means--

   (A)  a Federal reserve bank, or an entity that is a commercial or savings bank, industrial savings bank, savings and loan association, trust company, federally-insured credit union, or receiver, liquidating agent, or conservator for such entity and, when any such Federal reserve bank, receiver, liquidating agent, conservator or entity is acting as agent or custodian for a customer (whether or not a "customer", as defined in section 741) in connection with a securities contract (as defined in section 741) such customer; or

      (B)  in connection with a securities contract (as defined in section 741) an investment company registered under the Investment Company Act of 1940.

Here, there is no dispute that the transfers were made from the trust accounts at TD Bank and/or Wells Fargo to Parcside's bank accounts at Chase.  TD Bank, Wells Fargo, and Chase are all "financial institutions" within the meaning of § 101(22).  Therefore, each transfer at issue in these consolidated cases was both "from" and "to" a financial institution.

In 1996, the 11th Circuit Court of Appeals examined this aspect of § 546(e) which, at the time, did not include the phrase "or for the benefit of" but provided only that the transfer must be "made by or to a . . . financial institution."  *Munford v. Valuation Research Corp. (In re Munford, Inc.)*, 98 F.3d 604, 610 (11th Cir. 1996).  In *Munford*, the 11th Circuit held that the transfers at issue were made by the debtor to shareholders and, thus, the defense did not apply, despite the fact that the funds were deposited with a financial institution and were later sent to shareholders in exchange for their shares. *Id.*  The 11th Circuit determined that the financial institution was only "presumptively involved in [the] transaction" but was really "nothing more than an intermediary or conduit."  Because the "bank never acquired a

beneficial interest in either the funds or the shares", the transfer did not "involve a transfer to one of the listed protected entities" and the defense did not protect shareholders. *Id.* Other circuit courts of appeal disagreed with *Munford. See, e.g. Official Comm. of Unsecured Creditors of Quebecor World (U.S.A) Inc. v. Am. Life Ins. Co. (In re Quebecor World (U.S.A.) Inc.)*, 719 F.3d 94 (2d Cir. 2013) (*citing Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 333 (2d Cir. 2011)); *QSI Holdings, Inc. v. Alford (In re QSI Holdings, Inc.)*, 571 F.3d 545 (6th Cir. 2009); *Contemporary Indus. Corp. v. Frost*, 564 F.3d 981 (8th Cir. 2009); *Lowenschuss v. Resorts Int'l, Inc. (In re Resorts Int'l, Inc.)*, 181 F.3d 505 (3d Cir. 1999).

In 2006, Congress amended the statute by adding the parenthetical phrase "(or for the benefit of)" so that the relevant part of the statute now covers transfers "made by or to (or for the benefit of)" a financial institution.  Congress thus rejected the construction adopted in *Munford.*

> [W]hen Congress amended § 546(e) by adding the parenthetical "(or for the benefit of)" following the phrase "made by or to," standard rules of construction require the phrase "made by or to" must mean something different than "for the benefit of."  Since "for the benefit of" embraces a beneficial interest in the securities, "made by or to" cannot be read to include that requirement. Thus, the section must be read to mean that Congress rejected the argument that the bank must have some beneficial interest at stake, not merely be honoring a contractual obligation to its account holder.

*Delta Envtl., Inc. v. Bevan (In re D.E.I. Sys.)*, 996 F. Supp. 2d 1142, 1150 (D. Utah 2014).

Accordingly, the transfers at issue here were from and to financial institutions and the second part of the § 546(e) defense is satisfied.

<u>Transfers were made in connection with a securities contract</u>

Section 546(e) states that "the trustee may not avoid a transfer that is a transfer made . . . in connection with a securities contract, as defined in section 741(7)."

Section 741(7)(A)(i) defines "securities contract", in relevant part, as "a contract for the purchase sale, or loan of a security."  Sections 101(49)(A)(xii) and (xiv) define "security", in relevant part, as including

> (xii)  investment contract or certificate of interest or participation in a profit-sharing agreement or in an oil, gas, or mineral royalty or lease, if such contract or interest is required to be the subject of a registration statement filed with the Securities and Exchange Commission under the provisions of the Securities Act of 1933, or is exempt under section 3(b) of such Act from the requirement to file such a statement;

> [and]

> (xiv)  other claim or interest commonly known as "security".

The Quality Investment Scheme involved a number of financial transactions documented by written contracts.  For example, each insurance policy was purchased from the original insured or owner by Parcside pursuant to a contract of sale.  Parcside then re-sold the insurance policies to Watershed under other contracts of sale.  Watershed then re-sold the insurance policies to the relevant trusts using yet other contracts of sale.  In spite of some of the arguments made here, none of the contracts documenting the sale of the insurance policies are "securities contracts" within the meaning of § 741(7)(A).

The European Investors were the ultimate source for the funds to purchase the subject life insurance policies, which were to be obtained for their indirect investment benefit.  Each of the European Investors purchased participation interests in a QI Fund pursuant to a written participation agreement as described in a related prospectus.  If the participation agreements entered into by the European Investors were offered in the United States, they would be considered securities contracts under subsection (xii) of § 741(7)(A).  It is obvious that the participation agreements are "securities".  It does not matter that the participation agreements were offered solely outside the United States, as there is nothing

in the definition of "securities contract" under § 741(7)(A) requiring the subject contract to be offered in the United States. Indeed, subsection (xiv) clearly covers any "other claim or interest commonly known as 'security'".

To be avoided, the transfers must have been made "in connection with" a securities contract. Here, the next step in the analysis is to determine whether the transfers at issue were made "in connection with" the participation agreements entered into by the European Investors.

The life insurance policies purchased and re-sold by Parcside played a key role in the Quality Investment Scheme. Pursuant to the participation agreements, investors purchased participation interests in one of the QI Funds. Each QI Fund was to be made the beneficiary of a Florida trust that either owned directly or owned indirectly through a corporation the related life insurance policy. According to the prospectuses presented to the European Investors, the investors would capitalize on their investment once the life insurance policy matured or when the reinsurance paid the relevant amount. In addition, European Investors who bought a participation interest in a BGI Fund received monthly interest payments and were promised a guaranteed return on their investment.

Many courts have held that a transfer is "in connection with" a securities contract if it is "related to" the securities contract in any manner. *E.g., Crescent Res. Litig. Trust v. Duke Energy Corp.*, 500 B.R. 464, 476 (W.D. Tex. 2013); *Krol v. Key Bank N.A. (In re MCK Millennium Ctr. Parking, LLC)*, 532 B.R. 716 (Bankr. N.D. Ill. 2015) (citing cases). Based on the evidence before the Court, there is no doubt that the transfers at issue in these consolidated cases were related to, and thus "in connection with", the participation agreements entered into by the European Investors.

11

The entire point of the participation agreements, and the investment by the European Investors pursuant thereto, was to obtain a return arising from payment under life insurance policies acquired by the trusts.  From the start, it was contemplated that funds provided by the European Investors pursuant to the participation agreements would be used to acquire interests in and maintain life insurance policies for the European Investors' indirect benefit.  The transfers received by Parcside were payments in connection with acquisition of these very life insurance policies.  It does not matter that the sale by Parcside to Watershed of each policy was one level removed from the trust that would eventually acquire the policy.  Each such sale, and thus the transfer to Parcside of the purchase price, was nonetheless related to the overall investment scheme and thus to the relevant participation agreements, the securities contracts at issue here.  Even if Parcside could claim to be insulated from the trusts due to the fact that it never sold a policy directly to one of the trusts, there is nothing in the case law that would permit the Court to give weight to this distinction.  The contracts now before the Court, all of which were prepared on behalf of Parcside, indicate that the subject life insurance policies would end up held by the relevant trusts, for the ultimate benefit of the European Investors.   There is no doubt that the acquisition of the life insurance policies through Parcside was a key component of the Quality Investment Scheme and that the payments for those policies – the transfers at issue here – were related to and thus "in connection with" the participation agreements.

The Trustee forcefully argues that Parcside and Lian are central evil-doers in the Quality Investment Scheme and that permitting the application of the § 546(e) defense relieves Parcside and Lian of financial responsibility for their wrongful acts.  Yet there is nothing in the § 546(e) defense or the case law construing it that would permit such an

exception.  Indeed, even the actual fraud claims to which the § 546(e) defense does not

apply focus on the fraudulent intent of the debtor and not of the recipient of the transfer.[3]

<u>The § 546(e) defense preempts the Trustee's unjust enrichment claim</u>

Citing the Supremacy Clause of the United States Constitution, U.S. Const. art. VI,

cl. 2, many courts have held that § 546(e) preempts state law unjust enrichment claims

where the trustee seeks to recover the same transfer that § 546(e) protects from avoidance.

*E.g.*, *Contemporary Indus. Corp. v. Frost*, 564 F.3d 981, 988 (8th Cir. 2009);

*AP Servs., LLP v. Silva*, 483 B.R. 63, 71 (S.D.N.Y. 2012); *Official Comm. of Unsecured*

*Creditors v. Fleet Retail Fin. Group (In re Hechinger Inv. Co. of Del., Inc.)*, 274 B.R. 71, 95-

98 (D. Del. 2002).  Such is the case here.  The Trustee premises her unjust enrichment

claim on the same facts as her constructive fraudulent transfer counts.  The unjust

enrichment claim is preempted.

<u>Applying § 546(e) to the facts of this case does not give § 546(e) extraterritorial effect</u>

The application of the § 546(e) defense in these cases does not give the statute

extraterritorial effect.  The present action involves two suits in the United States against

defendants located in the United States.  The transfers to be avoided occurred in the United

States.  The transfers were from United States entities and were made to United States

entities using financial institutions located wholly in the United States.  That the

participation agreements were entered into by the European Investors outside the

territorial United States has no impact on this analysis.

---

[3] The Court is mindful of the fact that the Trustee also loses the ability to pursue actual fraud claims
relating to transfers prior to the two year period covered by § 548(a)(1)(A) that may otherwise be
recoverable under § 544 and applicable state law.  In carving out actual fraud claims from the §
546(e) defense, Congress elected to permit only actual fraud claims under § 548.

<u>Lian was not the "entity for whose benefit the transfers were made"</u>

In Count VIII of the amended complaint against Lian, the Trustee alleges that Lian was the person for whose benefit the transfers were made. The Trustee alternatively argues that Lian was a subsequent transferee of the transfers who did not provide value or receive them in good faith.

There is nothing in the Trustee's amended complaint against Lian to support the conclusion that Lian was the person for whose benefit the subject transfers were made. At most, in the amended complaint the Trustee alleges that Lian, as sole owner and officer of Parcside, controlled Parcside and thus benefitted by the transfers made to Parcside. If this is enough to make an equity owner and officer of a corporation subject to suit as a result of payments made to the entity, then every controlling equity owner of a corporate entity is a proper defendant when the entity received a fraudulent transfer. There is no case law to support this argument. The benefit received by the defendant must be a benefit obtained as a result of the very transfer at issue in the case, not the indirect benefit obtained by owning equity in the entity that received the transfer.

Likewise, there is nothing in the amended complaint to support the conclusion that Lian was a subsequent transferee of the subject transfers. The transfers in question were cash payments made by wire transfer to Parcside's bank accounts. Even if Parcside later made distributions to Lian, a fact not specifically alleged in the amended complaint, such distributions are not a re-transfer of the wire transfers received by Parcside. While the Court can certainly imagine circumstances where funds are received by an initial transferee and immediately re-transferred to another such that an argument may be made that the eventual transferee is a subsequent transferee for purposes of § 550, there are no such allegations here.

14

For the first time in her response to the present request for summary judgment, the Trustee alleges that Lian is the *alter ego* of Parcside and so benefitted from the transfers. In her response, the Trustee includes several allegations intended to support the argument that Lian and Parcside are one and the same, consistent with applicable law.  None of these allegations are contained in the amended complaint.  There is nothing alleged in the amended complaint to cause the Court to consider Parcside other than as an independent corporate entity.[4]  A motion for summary judgment is a request that the Court grant the relief requested in the complaint based on the allegations in the complaint and undisputed facts.  It is not appropriate to request in a motion for summary judgment or a response thereto relief that is not already addressed in the complaint.

<u>Trustee's *ore tenus* request to amend the complaint against Lian</u>

At oral argument, the Trustee requested leave to amend the complaint against Lian once again, to add allegations relating to the *alter ego* argument.

At this point in the proceedings, the Trustee may amend only with the opposing party's written consent or with leave of Court.  The Court should freely give leave when justice so requires. Fed. R. Civ. P. 15(a)(2), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7015.  The Court has "great discretion when deciding whether to grant a

---

[4] Even if the Court considers the evidence pointed to by the Trustee in her Response, that evidence would not support a finding of *alter ego*.  For example, the fact that Lian, as sole owner of Parcside, benefits from Parcside obtaining a profit does not mean that any payment to Parcside that results in a profit for the entity is for the benefit of Lian as contemplated by § 550.  The primary point of forming and operating a for-profit entity is to obtain a profit.  If any profitable transfer to such an entity was deemed to be for the benefit of the entity's owners for purposes of avoidance under § 550, every owner of a corporate entity would automatically be a potential defendant where the entity received a fraudulent transfer.  There is no case law to support this broad an application of § 550. Nor does the burden somehow shift to Lian to show that he is not the *alter ego* of Parcside for this purpose, as the Trustee argues.  The Trustee has the burden of proof on all elements of her amended complaint which, again, does not even allege any component of an *alter ego* or piercing the corporate veil claim against Lian.

motion for leave to amend a complaint following the filing of responsive pleadings." *Lowe's Home Centers, Inc. v. Olin Corp.*, 313 F.3d 1307, 1314-15 (11th Cir. 2002). "It is not an abuse of discretion for a [] court to deny a motion for leave to amend a complaint when such motion is designed to avoid an impending adverse summary judgment." *Id.* at 1315. However, the Court must keep in mind that "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Here, the Trustee filed her initial complaint against Lian on August 21, 2014. As of the oral argument in this matter, the adversary proceeding had been pending for a year. In bankruptcy matters, it is unusual for an adversary proceeding to remain pending after a year, let alone not have a trial date.

In any case, the Trustee was long ago on notice of Lian's argument that he could not be held liable under the complaint as originally plead, the Trustee filed her amended complaint without addressing the issue, and the Trustee otherwise failed to request an appropriate amendment in a timely manner. Lian filed his motion for summary judgment on November 26, 2014. By that motion, the Trustee became aware of Lian's argument that, absent a theory of *alter ego* or piercing the corporate veil, Lian could not be considered to have benefitted from payments to Parcside, a separate legal entity. This is consistent with Lian's Second and Third Affirmative Defenses, filed the prior month on October 6, 2014. The last paragraph of the Second Affirmative Defense states:

> As Mr. Lian at all times acted in good faith in pursuing and conducting the lawful business affairs and activities of Parcside and Reserve the Trustee may not seek to pierce the corporate veil of Parcside and Reserve by alleging claims

against him, therefore, the Trustee has failed to state a claim against Mr. Lian for which she is entitled to any legal or equitable relief as a matter of law.

Lian's Third Affirmative Defense included the following:

As Mr. Lian at all times acted in good faith in performing his legal duties and discharging his responsibilities in his authorized capacity on behalf of Parcside and Reserve for their lawful corporate objectives and benefit and not for his own personal gain or profit the Trustee may not seek to pierce the corporate veil of Parcside and Reserve by alleging claims against him, therefore, the Trustee has failed to state a claim against Mr. Lian for which she is entitled to any legal or equitable relief as a matter of law.

After this, on December 18, 2014, the Trustee sought leave to file an amended complaint against Lian.  In her amended complaint, the Trustee added avoidance actions under New York law but did not add any claims based on *alter ego* or piercing the corporate veil.

Three months later, on March 20, 2015, the Trustee responded to Lian's motion for summary judgment.  In her response, she argued that Parcside and Reserve Capital, LLC are *alter egos* of Lian.  However, that allegation does not appear in the complaint or amended complaint.  The Trustee did not request leave to amend the complaint a second time to add *alter ego* claims against Lian until the July 28, 2015 oral argument on the present motion for summary judgment – some eight months after the issue was first raised by Lian -- and only after the Court pointed out that the amended complaint did not contain an *alter ego* claim.

The Trustee had ample opportunity to request leave to amend her complaint to address *alter ego*.  The Trustee was aware of Lian's argument in this regard before she presented her first amended complaint.  The Trustee was aware of the need to address this concern when she filed her response four months before oral argument on the motion.  To permit amendment now would unduly delay these adversary proceedings, which have been pending for more than a year.  Further, given the timing of the Trustee's request it appears that the Trustee sought leave to amend solely to avoid an adverse ruling on Lian's motion for

summary judgment. This is not appropriate. *Lowe's Home Centers, Inc. v. Olin Corp.*, 313 F.3d 1307, 1315 (11th Cir. 2002).

In any event, amendment in this case is futile. The Trustee brings an action against Lian under sections 544 and 548 of the Bankruptcy Code. In this case, the latest the Trustee may bring such an action is two years after the entry of the order for relief. 11 U.S.C. § 546(a)(1)(A). Here, the effective petition date—and thus the order for relief—is September 25, 2012. The two-year statute of limitations has expired. Therefore, the Trustee may amend the complaint only if such amendment would relate back to the date of a timely pleading pursuant to Fed. R. Civ. P. 15(c), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7015. "An amendment to a pleading relates back to the date of the original pleading when the amendment asserts a claim or defense that rose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). A further amendment of the complaint against Lian would need to add facts not in any way addressed in the original complaint. The proposed *alter ego* or piercing the corporate veil claim cannot be said to arise out of the conduct, transaction, or occurrence set out in the original complaint.

The Court proposes to deny the Trustee's *ore tenus* request to file a second amended complaint.[5]

Accordingly, the Court proposes the following:

---

[5] The Trustee recently filed a request to file third amended counterclaims against Parcside and a second amended complaint against Lian at ECF No. 395. The pending motion for leave to amend seeks to add as plaintiffs entities recently substantively consolidated as debtors in the above-captioned bankruptcy case. That motion does not affect the Court's ruling here.

1.      The Motions [ECF No. 203, Adv. Proc. No. 13-01479-EPK and ECF No. 24, Adv. Proc. No. 14-01600-EPK] should be GRANTED.  The Trustee's *ore tenus* motion to further amend the complaint against Lian should be DENIED.

2.      Judgment should be entered in favor of Parcside on the following counts of the second amended counterclaim:

Count III (Avoidance of Fraudulent Transfers Pursuant to § 548(a)(1)(B) of the Bankruptcy Code);

Count IV (Avoidance of Fraudulent Transfers Pursuant to § 544 of the Bankruptcy Code and Section 726.105(1)(A) of the Florida Statutes);

Count V (Avoidance of Fraudulent Transfers Pursuant to § 544 of the Bankruptcy Code and Section 726.105(1)(B));

Count VI (Avoidance of Fraudulent Transfers Pursuant to § 544 of the Bankruptcy Code and Section 276 and 278 of the New York Debtor Creditor Law);

Count VII (Avoidance of Fraudulent Transfers Pursuant to § 544 of the Bankruptcy Code and Section 274, 275 and 278 of the New York Debtor Creditor Law);

Count VIII (Turnover and Recovery of Property Pursuant to § 550) only to the extent the Trustee seeks recovery under the above counts and not under Count II (Fraudulent Transfer Pursuant to § 548(a)(1)(A) of the Bankruptcy Code); and

Count X (Unjust Enrichment).

3.      Judgment should be entered in favor of Lian on the following counts of the amended complaint:

Count I (Fraudulent Transfer Pursuant to Section 548(a)(1)(A) of the Bankruptcy Code);

Count II (Fraudulent Transfer Pursuant to § 548(a)(1)(B) of the Bankruptcy Code);

Count III (Avoidance of Fraudulent Transfers Pursuant to § 544 of the Bankruptcy Code and Section 726.105(1)(a) of the Florida Statutes);

Count IV (Avoidance of Fraudulent Transfers Pursuant to § 544 of the Bankruptcy Code and Section 726.105(1)(b) of the Florida Statutes);

Count V (Avoidance of Fraudulent Transfers Pursuant to § 544 of the Bankruptcy Code and Section 726.106(1) of the Florida Statutes);

Count VI (Avoidance of Fraudulent transfers Pursuant to § 544 of the Bankruptcy Code and Section 276 and 278 of the New York Debtor Creditor Law);

Count VII (Avoidance of Fraudulent Transfers Pursuant to § 544 of the Bankruptcy Code and Section 274, 275 and 278 of the New York Debtor Creditor Law); and

Count VIII (Recovery of Property Pursuant to § 550 of the Bankruptcy Code).

4.      This Order constitutes the Court's proposed conclusions of law consistent with the *Order on Plaintiff's Motion to Withdraw Reference* entered in District Court Case No. 14-cv-80919-MIDDLEBROOKS.[6]

5.      The clerk is directed to submit to the District Court, pursuant to 28 U.S.C. § 157(c)(1) and Fed. R. Bankr. P. 9033 the following:

a. this Order;

---

[6] Prior to consolidation of these two adversary proceedings, this Court's Adv. Proc. No. 14-1600 was subject to an order withdrawing the reference entered by Judge Marra in District Court Case No. 14-81501-CIV-MARRA, while this Court's Adv. Proc. No. 13-01479-EPK was subject to a similar order entered by Judge Middlebrooks in District Court Case No. 14-cv-80919-MIDDLEBROOKS.  The primary difference between the withdrawal orders entered by Judge Marra and Judge Middlebrooks is that the order entered by Judge Marra would have permitted this Court to enter final orders on dispositive motions to the extent such orders did not constitute a final determination terminating the action, while the order entered by Judge Middlebrooks requires the filing of proposed findings of fact (where appropriate) and conclusions of law on all dispositive motions even where the proposed ruling would not constitute a final ruling terminating the action.  Because these cases are now consolidated with Judge Middlebrooks, this Court will issue proposed findings of fact (where appropriate) and conclusions of law on all pending dispositive motions.

b. the second amended counterclaims of the Trustee [ECF No. 243, Adv. Proc. No. 13-1479-EPK] and the amended complaint against Lian [ECF No. 41, Adv. Proc. No. 14-1600-EPK];

c. the instant Motions [ECF No. 203, Adv. Proc. No. 13-1479-EPK and ECF No. 24, Adv. Proc. No. 14-1600-EPK] with exhibits [ECF Nos. 204 and 205, Adv. Proc. No. 13-1479-EPK, and the responses [ECF Nos. 238 and 308, Adv. Proc. No. 13-1479-EPK] with exhibits [ECF Nos. 239, 253, 309, 310, 312, and 313, Adv. Proc. No. 13-1479-EPK], reply [ECF No. 265, Adv. Proc. No. 13-1479-EPK], and sur-reply [ECF No. 282, Adv. Proc. No. 13-1479-EPK] with exhibits [ECF Nos. 283 and 286, Adv. Proc. No. 13-1479-EPK] thereto;

d. the joint stipulation of facts relative to the Motion [ECF No. 292]; and

e. any objections filed pursuant to Fed. R. Bankr. P. 9033.

6.    The parties shall comply with Fed. R. Bankr. P. 9033.

### ###

Copies furnished to:

Eyal Berger, Esq.

*Eyal Berger, Esq. is directed to serve a conformed copy of this order on all appropriate parties and to file a certificate of service.*